Our final case this morning is number 24, 1624 Apple v. Smart Mobile Technologies LLC. Okay, Ms. Oliver. Good morning and may it please the court. Angela Oliver on behalf of Apple. This case is about a box drawing exercise. We've briefed the issues in terms of claim construction and in terms of a challenge to the substantial evidence, but at bottom the question here is simply whether a multi-step process in the prior art discloses two of the claim elements and here it does. The prior art discloses multiple steps or functions within its overarching process and two of those functions disclose the claim elements here. The board went astray by buying into Smart Mobile's argument that there is no way to break the prior arts overarching process into more discrete distinct steps. Well isn't that the way you presented the case in the petition? When we read your petition, when we read Dr. Jensen's declaration, paragraph 123, when we read your reply, it seems to have made it pretty clear to the board that the way you designed your unpatentability theory, it was to set out to prove that the GGSN has logically distinct functions inside of it with respect to the server and the network switch box functions. Your Honor, we did say in our petition that it has distinct functions. That was talking about the prior art, not the challenged claim language, so we were not conceding as a matter of claim construction that this was required by the claims. Our point was simply to argue that a skilled artisan would have looked at the prior art and seen two identifiable functions occurring there. I guess what I'm trying to figure out is, if you in fact made a case about attacking this claim through your explanations about the prior art through your petition and reply, all premised on the idea that the prior art reference discloses logically distinct functions, then I'm not sure we can fault the board for saying, no, you did not prove that Ajo Pelto has logically distinct functions. Sure, well we tried to make this clear before the board during the hearing by saying, again, we were just looking for two functions that exist, whether or not they are distinct in the terms of the board ultimately used in the final written decision. I think that's an important point. Even though we use the term distinct in our petition and then in our reply, we never expected the kind of rigid analysis of that that the board ended up taking. What about your expert's declaration that was submitted with the petition? It's paragraph 123 that was cited in the petition and the expert specifically says that this functionality would be implemented as different logical, e.g. software and entities on a shared platform. That takes the meaning of logically distinct or whatever it is we're talking about, you know, distinct, right? To a different level than what you're talking about, right? So I think that paragraph certainly is useful to support the idea that, sure, when you implement this, you would implement it in different functions when you're implementing the software. So if that is what the expert said and then the board didn't agree that it was on different, that it hadn't been shown by a preponderance of evidence that these different functions were implemented in different software modules because there's nothing in the reference that talks about that, then why isn't that a problem? Well, Your Honor, and maybe let me take a step back. In this paragraph in 123, there is nothing here that says specifically it would be disclosed in or it would be implemented in a certain format in the software. It just says different logical software entities. There's nothing in the patent here that talks about how this would be implemented, and so there was nothing for our expert to try to compare that to. This is just kind of a basic... But we're talking about the premise of your theory of why Ajo Pelto maps on to the claim. I mean, it's pretty clear, again, in the reply at A315, you know, this is, you're really trying to spotlight it. Quote, thus whether Ajo Pelto's GGSN server functionality and router functionality have distinct hardware is irrelevant. Instead, the question is whether Oposita would have found the claimed server and claimed network switch box obvious from Ajo Pelto's logically distinct GGSN function teachings. And that's entirely consistent with other statements in your petition about the routing functionality in addition to and distinct from the server functionality and the GGSN routing functionality would be implemented as a logical entity. And then with the Jensen paragraph 123 declaration. So it was up to you how you wanted to present your case and this is the way you presented your case about Ajo Pelto necessarily teaching logically distinct functions. I don't see anywhere in either your petition or your reply saying, well, you can sort of mix and match these two functions as long as they're ultimately somehow being performed by Ajo Pelto's GGSN. That is good enough. I don't see anything like that. I see everything devoted to the idea of proving that the functions are logically distinct in Ajo Pelto. Your Honor, you are correct that we we use the word distinct, logically distinct, repeatedly in our petition and then our reply. But I think looking at this in hindsight, now having seen the board's decision, what we meant there was not what the board ultimately did in its decision. We were simply trying to... What you meant was not what you said? What we meant was not as a matter of claim construction. We were addressing the prior art and we were simply saying there's two functions that a skilled artisan would understand to be there. This was clear at the hearing. So at Appendix 404, one of the administrative patent judges said to us, all you're saying is one of ordinary skill in the art, reading Ajo Pelto, would see two different functionalities. Is that correct? And our counsel said, yes, that is correct. So that was the point. But then he says, you know, the whole idea is separateness there, you know, and then the board is confused because it doesn't really see two separate sets of description in Ajo Pelto. And in fact, when we look at Ajo Pelto, the references to things in Ajo Pelto about the server function are embedded inside the discussions of Ajo Pelto's routing function. And so I can understand why the board would be confused and see that, well, maybe there isn't really any distinctness between the server and routing functions if what you're trying to point at in Ajo Pelto for a server function is inside Ajo Pelto's description of the routing function. It's a step of the overarching process of routing. Of the routing function. And so if you're going to try to prove that they are somehow logically distinct, when they look so interrelated, at least for purposes of Ajo Pelto's disclosure, it makes it much harder to make your case that they are somehow logically distinct. I think this brings me to my next point, that even let's assume we're in a world where we needed to show that these were distinct. I think that begs the question of what does distinct mean in the context of a software process flow like we're relying on here. And so the proper question, I think, in that context should have just been very different than the physical mechanical arts context. The proper question should have been whether a skilled artisan would have looked at that overarching routing process, seen the process flow, and understood that there were multiple steps or multiple functions happening within that flow. That's different than what the board did in its analysis. The board looked at whether the prior art calls them distinct. It looked at whether the prior art has some sort of overlap between those functions. But that's not how that test should apply in the context of a software process flow. I think a good analogy here is the bot mate case that we cited during the oral hearing. And in that case that also involved a separate and distinct type question. In the prior art there also had a sequential process flow at issue. And this court held in a non-precedential decision that the fact that there were multiple steps in the process flow, that was enough to show that there were distinct components. And so that is what, if we're going to analyze these as whether there are distinct elements, then that should have been the analysis that the board should have performed here, similar to the bot mate. It's called bot mate, not bot inmate. Maybe it's bot inmate. During the argument it was referred to as bot mate. Can I ask you, what do you think the board understood logically distinct to mean in its opinion? I think it is not clear what the board understood that to mean here. What did you mean when you said logically distinct? What did Dr. Jensen mean when he said logically distinct? That these are two steps. These are two functions in the overarching process that A. Appelso describes. Is it possible that Dr. Jensen thought that it meant it has to be different software functions? He certainly testified that it could be implemented as different entities and software. But again, that's not part of the claims, that's not described in the specifications, so there was no need to go into detail about that. What matters is the... It's hard for me reviewing it if I don't understand what it means, if that's going to be the legal test in a situation like this. I just want to know what the parties meant and what the board meant. So what is your thought on what Appel meant, at least, with respect to that term? Yes, Appel just meant that there are two functions in this process flow in the prior art that a skilled artisan would have understood. So one had to do... In other words, if there's a flowchart in their step 100 that relates to serving, even if it doesn't use the word serving, that's enough. If the step of routing is in a separate box. Why is that not line drawing and box drawing, as you said this case is about before? So I think this is box drawing. So I think if the prior art here had been presented in terms of a flowchart, where we talked about one box that said protocol management, we check the protocol, we see if it's supported, and then we encapsulate, that's the server functionality referred to. If that had been in one box and then the flowchart then said, okay, after you've checked the protocol, send it on using the ports to the rest of the network for distribution, the routing function that we identified, I think this would have been a very different case. There's claims that they were to separate the steps that way in that prior patent. Well and that is similar to in bot mate, where the claims separated the claims into two different programs. There was a fault management program, a fault inspection program, and a boot program. Two separate claim elements in that case, but yet this court still held that in response to an argument that one program could not show both of those claimed programs, this court still held that the different steps in that process could show each of those claimed elements. Bot mate was reaching a conclusion that two different claim elements, there didn't necessarily have to be distinctness between those two claim elements, given that they were both software and for other reasons as well. Here we're not asking ourselves whether or not the network switchbox function has to be distinct from the server function, because that's the playing field that's been defined in the petition. Assuming that's the case, then we are already operating under a rule of the case that we're looking for distinctness, and then the problem becomes, if you and your expert are citing some of the same passages in Aho Pelto to map on to the server function as well as the network switchbox function, you can understand why a fact finder would get confused as to trying to find a way to say that, huh, there is some separate distinctness between these two functions in Aho Pelto. Your Honor, going back to bot mate, I think there is one sentence in here that's critically important for this. So when the board reaches the, excuse me, when this court reaches the end of its analysis about this process flow, the court says we disagree that Becton, a prior precedent regarding physical separateness, we disagree that Becton requires that the fault inspection program and boot program must be performed by distinct programs to be distinct components of the patented intervention. So I think even in bot mate, the court was still analyzing this in terms of, even if we look at these as distinct components, this process flow was sufficient. Are we still challenging the claim construction? Yes, Your Honor, we argued that we'd never conceded that issue, and if the court agrees with us on that, then yes, we would say that this does not require separate and distinct elements. Why wouldn't it be invited error for all the reasons we've talked about with respect to the language used in your petition and your reply? Your Honor, I think if the court determines that we did concede this issue, then that resolves that question, and we are operating in the land of whether we did show that these are distinct, and then the question is just what does distinct mean in this unique software context where we have a process flow like this with multiple steps, and I think bot mate is helpful in that regard to show that. Is it correct that what you're saying is we're supposed to look at what distinct means with respect to the law, or is it that we look to what distinct means with respect to what the parties agreed to, because this is agreed to claim construction? We never agreed to... Assuming that we think you agreed. I'm sorry, just to clarify, assuming that the court thinks that we agreed with the idea of separate and distinct generally, the board did not say that we agreed that that means that a multi-step process cannot show a two claim elements that are distinct. We still have that position. We're simply saying that even if we're in a land of distinction, showing multiple steps in a process, multiple functions being performed, that is distinction. Your Honor, I see that I'm in my rebuttal time, so unless the court has... We'll give you two minutes. Thank you. Okay. Mr. Shaw. Good morning, Your Honors. May it please the court, Greer Shaw for Smart Mobile Technologies. Your Honors, this is not a case where the board went off on its own tangent. This is a case where the board understood Apple's unpatentability theory and found that Apple did not prove its case. Simple as that. As Judge Chen pointed out, the petition, Apple's the master of its own petition. Apple set up the issue as, does Ahuapalto teach separate logical elements in addition to and distinct from one another? Does it teach logically distinct function teachings? Those were Apple's own words from its petition. Those are the words that the board cited specifically and said Apple agrees that that's what must be shown in the prior art. The board then looked at the prior art and found that Apple had not proven its case. We heard some commentary that perhaps Apple retreated from this at the trial, and I think that's not the case either as we discussed in our brief, and these again are Apple's own words from the trial. The issue there was whether Ahuapalto taught different functions and distinct components. This is Appendix 403, separate and distinct server and network switch box. This is Appendix 407, individual different and discrete logical functions. This is at Appendix 438, distinct and separate functions. This is Appendix 439. These are the words from Apple's own lawyer, again addressing the issue of whether Ahuapalto taught these two functions as separate and distinct logical elements. You're taking the position here at argument that what I'm hearing and what I heard read in the briefs is that when they mean separate and distinct, they just mean that the functions are identified as two separate things that are happening, and that that has been satisfied here. What is your response to that? And particularly, I mean, what is your specific view on what logically distinct means? Well, Your Honor, logically distinct was the words of Apple's expert. He said logically distinct entities, I believe, was the word. Different logical entities was his phrase in paragraph 123, and we hear Apple's lawyer saying, well, we don't know what distinct means. Well, this was Apple's own word. Yeah, but what did he mean by that? I don't know, and it's not up to us to say. You've got an APA problem if I can't understand what the board said, and so what do you think it means? Apple, the board is accepting Apple's own phrasing. I think what... You have to do the analysis, so they must have a meaning for, they must understand what it means. Well, I think what they were looking for was that the alleged server teaching and the alleged network switchbox teaching were two different logical entities, and in the experts words, that would probably be either separate hardware, which there's no dispute, AOPelto does not teach that, or distinct and discrete, let's say, software programs, right, again, which AOPelto does not teach. I think that's what they were looking for, was some kind of distinction. What about separate software calls or functions? Perhaps, if there was evidence of that, but there wasn't. Their experts didn't point out anything like that in AOPelto. AOPelto doesn't say, in fact, their expert admitted AOPelto doesn't teach anything about the software. This is in paragraph 78 of Dr. Jensen's declaration. Hypothetically, what if they had evidence that it was necessarily so? I'm sorry, Your Honor. What if they, hypothetically, what if, in a case, a party had evidence that it was necessarily so that there would be separate function calls for this to operate? If the facts were different, then the outcome may have been different. If they were teaching in AOPelto that what Apple was pointing to is allegedly two separate things, if they were teaching in that case, or the patent rather, AOPelto patent, that those two functions were performed either by separate hardware or some discrete separate software, then this would be a different case. But there is no allegation that AOPelto discloses two things separately and distinctly that way. And again, their own expert admitted that AOPelto doesn't teach anything about the software, and this is paragraph 78. And so what the expert did was attempt to bootstrap by pointing to these other references, the Granbaum and Stallings references, but then he admitted the deposition he didn't cite to teach anything about a GGSN. So he has no support for his opinion at paragraph 123 that there's different logical entities. It's just hand-waving. He doesn't cite anything that supports that that's how AOPelto actually did things. He disclaimed a deposition that Stallings taught anything about a GGSN. He said he wasn't citing Stallings to say anything about a GGSN. He doesn't say what different logical entities means. He never defines that. And by the way, I point out, Your Honor, that Dr. Jensen, AOPelto never submitted a second declaration from Dr. Jensen. So if these issues of what does distinct mean or what is different logical entities means, if that was some question that they wanted an answer to, they had an opportunity to answer the question in the second declaration. If we have two different functions here, you'd have to have two different software approaches to that, right? Well, I'm not sure that they're two separate functions. It's all, as Dr. Jensen pointed out... I understand that qualification, but if there were two separate functions, it would have to be different software, right? Possibly. Possibly. I mean, AOPelto says what it says, Your Honor. It's not clear to me, it wasn't clear to the board that AOPelto teaches these as separate functions. It's all under the heading routing, right? AOPelto calls this routing and routing has... So your main answer to my question is the premise that they're two separate functions here is wrong. I think Apple failed to prove that these are two separate and discrete functions, yes. I think the board found that and it was Apple's burden to prove that as they pitched it in their petition. Can I ask you to look at Claim 8 of AOPelto? It's on page 836. I'm sorry, Your Honor, which page? It's on page 836. 836? 836. I just want to make sure I'm understanding the technology right. So around lines, let's say 50 to 59, it talks about stripping by the gateway support node, it said first packet radio network encapsulation away according to the internet protocol of the first packet. All of that language there, does that, that's something that I see as being what a server would do. I'm sorry, Your Honor, I heard 836 which is the claims of AOPelto. That's correct. I asked you if I could walk through a claim with you. Okay, okay. Do you read the language of stripping the encapsulation and according to a first protocol and then encapsulating according to a second protocol, is that what, would that be serving? That's not what Apple pointed to as the server. I understand. I'm asking you so I understand the technology. I don't know. That was not an issue that was raised in before. What is serving then? Is serving, what is serving? I'm here to give an opinion on what serving means. Claim construction of the word serving was not an issue below. But I have to understand whether AOPelto teaches serving. Apple needed to prove its case that Apple, that AOPelto taught serving. I know I'm trying to determine that. Could you help me out by telling me what serving means? Again, serving, server was not a claim construction issue below. The server function that they, their theory was determining the protocol type, right? Right. And then they cited to several things in AOPelto where AOPelto is determining the protocol type. And each of those passages is inside a discussion about a routing function. Right. What they pointed to, what Apple pointed to for the alleged server functionality, was there's short sections in AOPelto that talk about the GGSN checking the protocol of a packet. And that's what they said was serving, checking a protocol. So that's how they defined it, their server functionality. Whether, and they said server, the claim term server should be given its plain ordinary meaning. There was no claim construction dispute. Apple portrayed this issue, the issue as the server and the network switchbox need to be functionally distinct entities, components, and we agreed with that. We agreed with that premise that they need to be functionally distinct. And so beyond that, there was no claim construction. Do you think that functionally distinct could be satisfied by having elements set forth in a claim separately? Possibly, sure. But they didn't point to the claims. Apple did not point to the claims as in support of their arguments, claims of AOPelto. The board was looking at the specific portions of AOPelto that Apple pointed to as the alleged server functionality and the board had no obligation to come up with arguments that Apple itself didn't make. This court's precedent is clear on that. So whatever Apple thought server meant, server functionality meant, they specified in AOPelto and that's what the board looked at and the board specifically addressed each of their assertions about what AOPelto taught. The burden was not on the board to then sift through AOPelto and see if there was some other argument that Apple could have come up with but failed to do. With respect to the issue of whether the board should have construed the claims or improperly construed the claims, if there was a claim construction dispute, Apple forfeited it by failing to raise it. They made the case in their petition that these elements needed to be separate and distinct components. We agreed with that. In our reply brief, the patent owner's response, we explained why Apple failed to prove its case. At that point, if Apple felt that claim construction should be such that these two features could be taught by the same functionality in the prior art, that was the time to raise that argument and Apple did not do so. In our view, the claim construction issue has been waived. We heard some discussion about bot mate. We addressed that in detail at pages 18 through 20 of our brief. Unless there are any further questions, I'll conclude my argument. Okay, thank you. Thank you, Your Honor. Thank you, Your Honors. Judge Stoll, I'd like to begin with your question regarding what does server mean. All we know is what we have in the claim language and what Smart Mobile has indicated in page 29 of its red brief. They said the server has controlling functions. That matches the claim language. It has a controller and so that's what we map to here. The server functionality, which is doing this protocol management, that is controlling how the packets are sent throughout the rest of the distribution network. There's no further details on server than that. It has a function in it, right, for server. It has a function for the routing but not for serving. That's what you're saying, right? I'm sorry, can you repeat the question? I understood you to be saying that the claim doesn't have a function for server. Am I correct? Yes, other than simply controlling something. It has a controller. Your petition always presumes there is a server function and the server function is determining the protocol type. That's right. So that's what you went to go looking for in Ajo Pelto. That's right. It is controlling something. Here we mapped it to controlling the packets, how they are distributed based on the protocol, and there was no dispute before the board that that would constitute a server. The only dispute was this idea of separate and distinct. So that there has been a server shown here. Now I'd like to also quickly address Claim 8 of Ajo Pelto that your Honor raised on Appendix 836. I think this does show that it helps show that these are distinct elements. This is similar to, is he correct that Apple didn't identify this to the board? We did not cite Claim 8 but we cited column 10 lines 22 through 27 which have the same set of steps flowing through in order. So checking the packet, checking the protocol, finding out it does not support the protocol, encapsulating the packet in a new type of packet, and then sending it on further through the distribution network. That's the same set of steps that you see in Claim 8. So we did cite that process flow. Unless there are any other questions, we would ask the court to vacate and remand.